## GILES PEASE *vs.* JEFFERSON BANCROFT.

Where an equity of redemption is attached by different creditors, at different times, a sale thereof on execution by the second attaching creditor, before the first has recovered judgment, is void as against all the others, and the third attaching creditor thereby obtains the rights to which the second would otherwise have been entitled. And such was the law, even before the provisions of the Rev. Sts. *c.* 97, §§ 34, 35.

Three creditors, on different days, attached their debtor's right of redeeming mortgaged real estate ; A., the second attaching creditor, first recovered judgment, and sold the equity of redemption to B., on his execution : The debtor afterwards released his interest in the mortgaged estate to B : B. released the same to A., who released it o P : The first attaching creditor subsequently recovered judgment, and caused ne equity to be sold on execution, and the proceeds of the sale exceeded the amount of his judgment and the officer's fees : The third attaching creditor afterwards recovered judgment, and put his execution into the hands of the officer who held the surplus proceeds of said sale, and he applied those proceeds towards satisfaction of that execution. P. claimed those proceeds, and brought an action against the officer for misapplying them. *Held,* that the proceeds were rightfully applied by the officer, and that P. had no cause of action against him.

THIS was an action to recover $ 100, which came into the hands of the defendant, as deputy sheriff, and was claimed by the plaintiff. The case was submitted to the court on the following facts :

On the 1st of August 1833, Darius Young was owner of an equity of redemption in certain real estate in Lowell. This equity was attached on three writs sued out against said Young by three of his creditors, namely, Daniel Dole, Jonathan Morse 2d, and William W. Fuller. Dole's attachment was made on the 2d of said August, on a writ in which the damages were laid at $ 200. Morse's attachment was made on the 27th, and Fuller's on the 30th of said August. These writs were duly returned and the actions were entered in court and prose cuted, respectively, to final judgment.

In said Morse's action, judgment was recovered and execution issued in June 1834. The execution was delivered to the officer who served the original writ, within thirty days after judgment was rendered, and he advertised and sold said equity of redemption, on said execution, on the 13th of August 1834, at public auction, to Artemas Young, for $ 30, and made due return of his doings to the clerk's office, within ninety days.

The execution and the officer's return thereon were duly recorded in the clerk's office and in the registry of deeds, within ninety days after said sale. On the 10th of March 1835, Darius Young released his interest in the premises to Artemas Young, by a deed of quitclaim. On the 12th of said March, Artemas Young, by a deed of quitclaim, released the same to said Jonathan Morse 2d, who gave a deed of quitclaim thereof to the plaintiff, on the 25th of August 1835.

Daniel Dole recovered judgment in his suit against Darius Young, in January 1837, and within thirty days thereafter, the execution which issued thereon was put into the hands of the defendant, who attached the equity on the original writ ; and he, after due advertisement, sold the same, on said execution, according to law, on the 1st of April 1837, to William W. Fuller aforesaid, for $ 300. At the time of this sale, notice was given to the defendant of the pendency of said Fuller's suit against said Darius Young, and of the attachment of said equity on the original writ in that suit.

Said Fuller recovered judgment in his suit against said Young, at the June term, 1837, of the court of common pleas, and within thirty days thereafter took out execution thereon, and put it into the hands of the defendant, who thereupon paid to said Fuller, in part satisfaction of his execution, $ 100, the sum which remained in the defendant's hands after satisfying the execution of Daniel Dole against said Darius Young — being the surplus proceeds of the sale of said equity on the last mentioned execution — and made return on said Fuller's execution that it was satisfied in part, namely, for the sum of $ 100.

At the time of the sale on Dole's execution against Young, the defendant had knowledge of the prior sale on Morse's execution against Young, and the present plaintiff demanded of the defendant the said $ 100, before he paid it, as aforesaid, to said Fuller.

*Mellen*, for the plaintiff. By the Rev. Sts. *c.* 97, §§ 34, 35, provision is made by which a subsequent attaching creditor may preserve his lien, though he recover judgment before the prior attaching creditor ; and under those statutes, the plaintiff might

not have a cause of action against the defendant. But this case depends on the law as it stood in 1834, before those statutes were passed ; and the question is, whether the officer had power to sell the equity of redemption, on the execution that issued in the second action in which it was attached, while the first action was pending.

The ground taken by the plaintiff is this ; that the sale was valid as against every body except the first attaching creditor. By *St.* 1798, *c.* 77, § 5, the officer's deed of the equity was as effectual to all intents and purposes, as if it had been made by the judgment debtor ; like *St.* 1783, *c.* 57, § 2, by which an extent made as good a title to the creditor as the debtor himself had. *Bartlet* v. *Harlow*, 12 Mass. 350. An extent is good, if contingent liens are not deducted. *Barnard* v. *Fisher*, 7 Mass. 71. *Warren* v. *Childs*, 11 Mass. 222. *White* v. *Bond*, 16 Mass. 400. See also *Clark* v. *Austin*, 2 Pick. 528. *Bigelow* v. *Willson*, 1 Pick. 491, 492.

Dole, the first attaching creditor, could hold only to the amount of $ 200, the *ad damnum* in his writ. *Chickering* v. *Lovejoy*, 13 Mass. 56.

*E. Fuller*, for the defendant.

SHAW, C. J. None of the cases cited, we think, are directly in point; but the case depends on a few plain principles. The plaintiff claims of the defendant $100, as the surplus of the sale by him, as a deputy sheriff, of an equity of redemption, over and above the amount of the execution upon which it was sold. As this equity was sold in June 1834, and the plaintiff took his title by a quitclaim of the estate to him by Jona. Morse 2d, in August 1835, it is very questionable whether he could maintain an action for this surplus, in his own name, even if it properly belonged to Darius Young, the original debtor, or Artemas Young, the purchaser of the equity of redemption, under the same attachment, as hereafter stated. The doubt is, whether a mere quitclaim deed of the estate would operate as an assignment of this surplus, in the hands of an officer, who had sold the equity of redemption on execution ; and if it would, then, whether it would be any thing more than an assignment of a chose in action.

But we are all of opinion, that the second attaching creditor had no right to cause the equity of redemption to be sold on his execution, whilst the prior attachment was pending ; and that the purchaser from the officer, at that sale, took nothing by that deed, as against the prior attaching creditor ; and .that when the sale was rightfully made on the execution issued in pursuance of the first attachment, the former was rendered wholly void. An equity of redemption is necessarily single and indivisible, and there can be but one rightful and valid sale, and but one party can have a right to redeem. In this respect it is entirely distinguishable from *Barnard* v. *Fisher*, 7 Mass. 71, and the other cases of levy on execution, where the property is taken at an appraisement, and where an equity of redemption is levied on, without deducting any thing for the incumbrance. A sale is made at what a purchaser will give, and this is necessarily influenced by the existence of prior attachments. This was manifest in the present case, where an equity was sold for $ 30, which afterwards sold for $ 300.

Whether this sale on the second attachment, pending the first, would have been good against the debtor, if the first attaching creditor had never obtained judgment, or never caused the equity to be sold pursuant to his attachment, we give no opinion. If it would have been good, it would seem to be injurious to the debtor, by causing his property to be sold at a reduced value. But the question does not arise here, because the plaintiff in this case represents both the original debtor and the purchaser under such second attachment.

The second attaching creditor having thus taken his judgment before the first, and attempted to sell the equity, and nominally satisfied his execution, the third attaching creditor became second, and having waited till after the valid sale, and then taken his judgment and execution, and seasonably demanded this surplus, we are of opinion that the defendant rightfully paid it over to him. The plaintiff could not demand the surplus, in virtue of his conveyance derived from Darius Young, the debtor, because the third attachment was made before his conveyance, and was good against the debtor ; nor in virtue of the conveyance of

Artemas Young, because he had no title, but as purchaser at the void sale of the equity, on the execution of the second attaching creditor.

*Judgment for the defendant.*